J-S02011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHARITI KALNOKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN KALNOKI | : | |
| | : | |
| Appellant | : | No. 1354 EDA 2024 |

Appeal from the Order Entered April 10, 2024
In the Court of Common Pleas of Delaware County Domestic Relations at
No(s):  PACSES No.: 107116871

BEFORE:  LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED JUNE 3, 2025**

Steven Kalnoki (Father) appeals from the child support order, entered in the Court of Common Pleas of Delaware County on April 10, 2024.  After careful review, we affirm based on the opinion authored by the Honorable Richard H. Lowe.  *See* Pa.R.A.P. 1925(a) Opinion, 7/25/24.

Father and Chariti Kalnoki (Mother) were married in 2004 and divorced in 2017.  They are the parents of three minor children (twins, born in 2011, and a younger child born in 2014).

On December 21, 2017, Mother filed a complaint in support.  On November 17, 2021, Mother filed a petition to increase support.  On December 21, 2022, a hearing was held before Hearing Officer Angela Martinez, who entered recommendations and findings.  Thereafter, the matter was designated as complex and, on May 12, 2023, a protracted hearing was held before Hearing Officer Michael Pierce. Hearing Officer Pierce's

recommendations for a support order incorporated, in part, Hearing Officer Martinez's recommendations of December 21, 2022.

Mother filed a timely demand for a hearing de novo, which was held on April 2, 2024. On that date, the court, following the hearing, determined the parties' "current order is appropriate." *See* Order, 4/2/24. That order set Father's support obligation for the three children at $4,300.00 per month, plus $430.00 per month in arrears, for a total of $4,730.00 per month, effective May 12, 2022. *Id.*[1]

Father filed a timely appeal from the support order. Both Father and the trial court have complied with Pa.R.A.P. 1925.

Father raises three issues for our review:

1. Whether the trial court erred by failing to conduct a de novo hearing, limiting Father's arguments, and requiring Father to specify errors made by the hearing officer?

2. Whether the trial court erred by relying upon the hearing officer's order and calculations and declining to calculate Father's income and child support obligations?

3. Whether the court erred by including an asset previously awarded and distributed in equitable distribution in Father's income for the purpose of calculating child support?

Appellant's Brief, at 4 (reworded for clarity).

> In reviewing orders granting, denying[,] or modifying support, this Court is limited to considering whether, based on clear and convincing evidence, the trial court abused its discretion. An abuse of discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or

_____

[1] Father has been employed as a lawyer with the law firm of Dechert, LLP since 2008.

overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality.

***Rebert v. Rebert***, 757 A.2d 981, 983 (Pa. Super. 2000) (citations omitted).

Father first argues that because the trial court required the parties to "list specific errors they believed had been made by the hearing officer" at the start of the de novo hearing, the court "impermissibly limited the scope of the parties' arguments[.]"  Appellant's Brief, at 9-10.  The trial court reasoned that this was necessary in light of the protracted history and complexity of the case.  ***See*** Trial Court Opinion,  7/25/24, at 2.  Father claims this is contrary to Pa.R.C.P. 1910.11 and this Court's decisions in ***Warner v. Pollock***, 644 A.2d 747 (Pa. Super. 1994) and ***Rebert***, ***supra***.

Rule 1910.11 provides, in relevant part:

**Rule 1910.11. Office Conference. Subsequent Proceedings. Order**

(i)      If a demand is filed, there shall be a hearing de novo before the court. The domestic relations section shall schedule the hearing and give notice to the parties.  **The court shall hear the case** and enter a final order substantially in the form set forth in Rule 1910.27(e) within sixty days from the date of the written demand for hearing.

Pa.R.C.P. 1910.11(i) (emphasis added).

In ***Warner***, the trial court adhered to a local Westmoreland County rule, which required a party seeking de novo review in a support matter to assign reasons for the "appeal."  ***Warner***, ***supra*** at 750. Father failed to assign reasons and the trial court dismissed father's demand for a de novo hearing.

On appeal, this Court reversed, holding that the local rule regarding the steps a party must take to obtain judicial review of the hearing officer's recommended support order, **to the extent that it required party to recite reasons for "appeal" or to risk having "appeal" dismissed,** was invalid as conflicting with Rule 1910.11, which grants parties to support proceedings an absolute right to de novo hearing before the court simply upon his or her written demand, with no need for assignment of reasons. *Warner*, *supra* at 750-51. "The rule does not require that a party state any grounds for the demand for a hearing, **nor are any restrictions placed upon one's right to a de novo hearing.**" *Id.* at 749.

To Father's point, the *Warner* Court further clarified the scope of the de novo hearing:

> We are also concerned that the Westmoreland rule, as it is currently drafted, could create misperceptions of what is to take place should a party demand a de novo hearing. First, we must agree with appellant that under Pa.R.Civ.P. 1910.11[,] a litigant has an absolute right to his/her day in court should it be desired. **Second, that hearing shall be de novo and not limited in scope. Third, there would be no need for the demanding party's opponent to also make a demand for a hearing or take an "appeal" from the recommended order**. To the extent Westmoreland County Rule W1910.11 is inconsistent with these points the rule is invalid.
>
> We acknowledge the trial court's position that the Westmoreland rule benefits litigants by alerting the court to possibly complicated cases or ones [that] would require a greater amount of time than average. Alerted to these matters[,] the court can schedule hearings in a more efficient manner. This may be true[;] however, Pa.R.Civ.P. 1910.11(j)(1) also allows litigants to move the court for a separate listing for these very same reasons.

*Id.* at 751 (emphasis added; footnote omitted). In *Warner*, this Court stated that under Rule 1910.11, "one demands a hearing, one does not file an appeal." *Id*. at 750. The Court emphasized the differences between an appeal and a hearing de novo, explaining that an appeal deals with assertion of specific error, whereas a de novo hearing is a full reconsideration of the case. *Id. See also Rebert*, *supra* at 984 ("`De novo' review entails, as the term suggests, full consideration of the case anew. The reviewing body is in effect substituted for the prior decision[-]maker and redecides the case.").

However, here, we emphasize that the court's statement at the start of the hearing—"Ma'am, what are you appealing? Why are you appealing? . . . What are you saying is wrong with that Order?"—was directed to Mother who, at the hearing, was proceeding *pro se*. *See* N.T. De Novo Hearing, 4/2/24, at 5. The court was clearly trying to guide Mother. After our review of the transcript of the hearing, we find Father's argument—that this statement required "the parties to list specific errors they alleged were made by the hearing officer," "limited the scope of the hearing, and did not permit Father to present his arguments and evidence as thought this were an initial hearing[,]"—is a mischaracterization. *See* Appellant's Brief, a 12-13.

The court heard Father's expert testify, at length, regarding Mother's earning capacity. *See* N.T. De Novo Hearing, *supra* at 28-50. The court also heard Father's arguments and accepted the evidence Father presented, which included his pay stubs and W-2 form, his gross and net monthly income, and Father's counsel's guidelines calculations. *See id.* at 12, 17-20, 23. As

Mother points out in her brief, Father had "every opportunity to produce supplemental evidence, specifically his tax returns. However, [Father] failed to do so." Appellee's Brief, at 11. When the court requested the tax returns be provided, Father's counsel, as Mother states, "deflected." *Id.* Our review of the record confirms this. *See* N.T. De Novo Hearing, *supra* at 11-12. The trial court concluded, therefore, that Father had presented nothing to establish that a change in the support order was warranted.[2]

After our review, we find no error or abuse of discretion, *Rebert*, *supra*, and we rely on Judge Lowe's opinion to affirm the order of support. The parties are directed to attach a copy of Judge Lowe's opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2025

_____

[2] The trial court notes that Father's position or title at Dechert, LLP was never put on the record and, thus, it was "unclear if [he] is a partner at Dechert or if [he] received any profit distributions, or other income that would not appear on his W-2s." Trial Court Opinion, *supra* at 3.

**IN THE COURT OF COMMON PLEASE DELAWARE COUNTY, PENNSYLVANIA**
**DOMESTIC RELATIONS**

| | | |
|---|---|---|
| CHARITI KALNOKI | : | DOCKET NO: 2018-00011 |
| Plaintiff | : | |
| | : | |
| vs. | : | PACSES NO: 107116871 |
| | : | |
| STEVEN KALNOKI | : | 1354 EDA 2024 |
| Defendant | : | |
| | : | SUPPORT |

<u>**OPINION**</u>

LOWE, J.                                                                FILED: 7-25-24

I.      <u>**Introduction**</u>

The Defendant has appealed the support order entered by this court on April 2, 2024,

("the Support Order") following a de novo hearing held on April 2, 2024 ("the De Novo

Hearing").[1] The De Novo Hearing followed an extended hearing on May 12, 2023, before the

Hearing Officer. The Hearing Officer recommended a 3-tier Support Order that was effective

December 1, 2021, and ran through 2023 (the "Recommended Order"). N.T. 6-7. Following the

entry of the Recommended Order, the Plaintiff filed a timely Demand for a Hearing De Novo.

The De Novo Hearing was held on April 2, 2024. This court issued its decision from the

bench. The Plaintiff is the Mother of the subject children and the Payee under the Support

Order. The Defendant is the Father of the subject children and the Payor under the Support

Order. The Defendant filed a timely Appeal to the Superior Court, on May 7, 2024. The Plaintiff

did not appeal. The Defendant raised three issues on appeal:

1. Whether the Court erred by limiting Appellants' arguments and requiring Appellant
   to specify errors made by the Hearing Officer, instead of conducting a proper de
   novo hearing.

---

[1] The transcript for the April 2, 2024, hearing is cited herein as N.T.

1

38

2. Whether the Court erred by declining to calculate the Appellant's income and child support obligation(s), and instead relied upon the Hearing Officer's Order and calculations.

3. Whether the Court erred by including an asset previously awarded and distributed in equitable distribution in Father's income for purposes of calculating child support.

Appellant's Concise Statement of Errors Complained of on Appeal filed May 14, 2024. The Defendant's complaints/issues on appeal are without merit and unsupported by the record. This court's April 2, 2024, decision should be affirmed.

## II. Factual Summary and History

At the De Novo Hearing, the only issue before this court was the support of three children. This parties' divorce and support litigation had been protracted. N.T. at 6. The support hearings in this case had been continued multiple times, and several interim orders had been entered. Id. The Recommended Order was retroactive to 2021. Id. Each party had been represented by an attorney before the Hearing Officer. N.T. 4. At the De Novo Hearing, the Plaintiff/Mother was pro se and the Defendant/Father was represented by counsel. N.T. at 3-4.

The Recommended Order included three different support obligations. The obligations varied based on variations in the Defendant's income during the relevant time periods. The Recommended Order set the Defendant's obligation as follows:

From December 1, 2021 to January 1, 2022

    Base support  $4,000.00    OOA $400.00      Total $4,400.00/mo.

From January 1, 2022 to May 12, 2023

    Base support $4,658.86    OOA $465.00      Total $5,123.86/mo.

2

From May 12, 2023 forward[2]

Base support $ 4,300.00        OOA $430.00        Total $4,730.00/mo.

The income percentage for all time periods was set at 85% Plaintiff and 15% Defendant. N.T. at 6-7. The Recommended Order was retroactive to December 1, 2021, and the Order superseded any prior interim orders.

At the time of the De Novo Hearing, the Defendant was a lawyer with the international law firm of Dechert, LLP. ("Dechert"). N.T. at 13. The Defendant had been employed continuously with Dechert since 2008, approximately 16 years. Id. The Defendant's position or title at Dechert was not stated on the record. It was unclear if the Defendant is a partner at Dechert or if the Defendant received any profit distributions, or other income that would not appear on his W-2s.

As proof of the Defendant's income, counsel for the Defendant provided this court with copies of the Defendant's W-2s from Dechert for tax years 2021, 2022, and 2023.[3] The Defendant did not provide any tax returns. The Plaintiff specifically asked to see Defendant's tax returns at the De Novo Hearing. The Plaintiff stated that Defendant had "never given me his tax returns" and "I want his tax returns." N.T. at 11. This court asked counsel for the Defendant "do you have [tax returns] you can give her?" Id. Counsel responded, "I can provide you with his W-2s now, yes. I believe I have his tax [returns] somewhere, but … we have never received actual income information from [Plaintiff]". Id. This court asked counsel again: "All I am trying

---

[2] The Hearing Officer only used Father's "base wages" – "no bonus"- to calculate Father's income from May 12, 2023 forward. See Paragraph 6 of the Recommended Order.
[3] The exhibit marked D-1, included Defendant's W-2s, hearsay letters from his employer, and summary prepared by Defendant's counsel. No tax returns were included.

3

to do is figure out whether you have one [a tax return] now that you can show ..." Id. Counsel responded "I can give you his W-2s ..." N.T. at 12. The Defendant never produced a tax return at the De Novo Hearing.

The Defendant's 2021 W-2 from Dechert showed gross earnings of $431,473,97. The Defendant's 2022 W-2 from Dechert showed gross earnings of $540,112.00. The Defendant's 2023 W-2 from Dechert showed gross earnings of $428,470.08. See D-1.

The Plaintiff described herself as a "stay-at-home mom" of three kids. N.T. at 5. The Plaintiff had an Associate Degree in Culinary Arts and very limited work experience. N.T. 33, 43. The Plaintiff also complained of undocumented health problems that negatively impacted her ability to work. Id. The Hearing Officer found that the Plaintiff had an earning capacity "higher than 30k/yr. but less than the 50/75k per year requested by Defendant/Father." See Paragraph 7 of the Recommended Order. The Hearing Officer set Mother's earning capacity at $40,000/year. See Paragraph 2 of the Recommended Order. The Hearing Officer also recommended that "this case should be relisted for review in 120 days to get a clearer picture of the Plaintiff's actual earnings based on change in profession (life insurance sales) or some other profession." Id. The Plaintiff decided not to wait for further review and filed a Demand for a Hearing De Novo.

At the start of the De Novo Hearing, this court asked the Plaintiff why she appealed the Recommend Order. N.T. at 5. The Plaintiff responded that the hearing Officer had set her earning capacity too high. Id. She testified "I've never in my life made over $20,000[/yr.]." Id. After a brief discussion, the Plaintiff agreed to defer to Defendant's counsel for prosecution of the De Novo Hearing. Id. The Plaintiff agreed to let the Defendant's counsel go forward to

4

41

"clarify things." Id. Counsel for the Defendant argued her case in three parts. N.T. 18. First, she made argument on the Plaintiff's earning capacity.[4] N.T.29-54. Second, she argued an alleged "double dipping" by the court. N.T. 16, 18, 22-24. Third, she claimed the court erroneously included in the Defendant's 2023 income a bonus the Defendant never received.[5] N.T. at 10, 15, 18.

Defendant's counsel prosecuted the De Novo Appeal and presented her case/arguments without any interference from this court. This court did not prohibit counsel for the Defendant from raising any issue, presenting any evidence, or calling any witness. Every witness called by the Defendant testified. Every document submitted for admission by Counsel for the Defendant was admitted. The court made an independent and de novo review of the evidence. The Defendant simply did not meet his burden or prove his case.

This court reviewed the guidelines based on the evidence presented at the De Novo Hearing. This court's findings were consistent with the Hearing Officer's May 12, 2023, Recommended Order. This court affirmed the Recommended Order. N.T. 54-56.

### III. Standard of review

---

[4] The Defendant had an expert witness testify at the De Novo Hearing. N.T. 29-54. The expert had performed a vocational assessment of the Plaintiff. N.T. at 37. The Defendant's expert testified that in his opinion the Plaintiff had an earning capacity of about $ 40,000. The court asked the Defendant's expert if he felt the Plaintiff's earning capacity would be in the $35,000 to $40,000 range and he responded "correct." N.T. at 49. The Hearing Officer set the Plaintiff's earning capacity similarly at $ 40,000. N.T. at 50. The Plaintiff did not appeal to the Superior Court, and Defendant did not raise the Plaintiff's earning capacity in its Statement of Matters Complained of.

[5] Counsel for the Defendant does not raise this issue on appeal. The record is however clear that the hearing officer set the Defendant's 2023 support obligation on his base earnings only- "no Bonus." See footnote 2 above. This court set the Defendant's Obligation base on the Defendant's 2023 W-2 and the other relevant income information supplied by the Defendant.

5

It is well-settled that a trial court's support order should only be disturbed on appeal "if the order cannot be sustained on any valid ground." *Brickus v. Dent*, 5 A.3d 1281, 1284 (Pa. Super. 2010). The findings of a trial court must be accepted if they are supported by competent evidence. Id. Trial courts have broad discretion that should only be disturbed if there was an abuse of the discretion or insufficient evidence was presented to sustain the support order. Id. An abuse of discretion is not merely an error of judgment. It requires a showing that the trial court in reaching a conclusion overrode or misapplied the law, or that the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. Id., citing *Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (internal citations and quotation marks omitted); see also *M.E.W. v. W.L.W.*, 240 A.3d 626, 634 (Pa. Super. 2020).

## IV.  Discussion and Analysis

The complaints or issues raised by the Defendant on appeal are without merit, and this court's Order of April 12, 2024, should be sustained.

### A. This court did not in any way restrict, limit, or interfere with the Defendant's arguments or the presentation of Defendant's case at the De Novo Hearing.

Counsel for the Defendant presented the Defendant's case at the De Novo Hearing without any restrictions or interference from the court. N.T. at 5. Every witness the Defendant called was allowed to testify. Every document or piece of evidence the Defendant presented, even hearsay, was admitted into evidence. The trial court did not restrict, limit, or interfere with the presentation of Defendant's case in any way. Defendant's Counsel chose not to produce the Defendant's tax returns, even after the trial court asked about them twice. N.T. at 11-12.

6

43

Defendant's counsel chose not to introduce any documents or evidence showing what each party received in equitable distribution. Defendant's counsel did not produce, reference, or offer into evidence any Property Settlement Agreement or final Equitable Distribution Order. Defendant's counsel chose not to call the Defendant to testify under oath about his income or what was considered or awarded in equitable distribution. The Defendant failed to meet his burden through no error of this court.

B. **The trial court calculated the Defendant's income and support obligations based on the testimony and evidence presented at the De Novo Hearing and the reasonable inferences drawn therefrom.**

This court calculated the parties' incomes and Defendant's support obligation based on the evidence that was presented at the De Novo Hearing. The Plaintiff's earning capacity was set based on the testimony of Defendant's expert witness. The Defendant's income was set based on his W-2s and other income information the Defendant presented at the De Novo Hearing.

The Defendant's expert set Plaintiff's earning capacity at $40,000/yr. N.T. at 49-50. The Defendant's expert's opinion was consistent with the finding of the hearing Officer.[6] This court set the Defendant's income and calculated the Defendant's support obligation based on the official income documents (W-2s) presented by the Defendant. The W-2s presented at the De Novo Hearing were consistent with the information presented before the Hearing Officer. Since this court and the Hearing Officer used consistent information, both calculated/found consistent support obligations. Consistency does not demonstrate an error or an abuse of discretion.

---

[6] The court asked the Defendant's expert if he felt the Plaintiff's earning capacity would be in the $35,000 to $40,000 range, and he responded "correct." N.T. at 49.

7

Our Supreme Court has directed that in calculating a parent's financial obligation to support his children "a court must make a thorough appraisal of the [parent's] actual earnings ...." *Mascaro v. Mascaro*, 803 A.2d 1186, 1194 (PA. 2002). The court is to consider all sources of the Defendant's income.[7] *MacKinley v. Messerschmidt*, 814 A.2d 680, 681 (Pa. Super. 2002).

By not providing his tax returns, the Defendant thwarted this court's ability to thoroughly appraise his actual earnings and/or income from all sources. This case has been pending since 2021.[8] The Plaintiff did not object, nor did she ask for a delay to obtain Defendant's tax returns. This court moved forward and set the Defendant's support obligations based on the information and evidence presented.

The Defendant in this case is an experienced attorney. The Defendant was also represented by highly capable counsel who often appear before this court. Despite all this knowledge and experience, the Defendant did not bring to or present at a De Novo Hearing copies of tax

---

[7] "Income" is defined as including:
compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income, income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefit; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.
23 Pa.C.S. § 4302.

[8] The effective date of this order was 2021. The matter has been pending for almost 2 ½ years as of the date of the De Novo Hearing.

8

returns for the years in question. This court requested the Defendant's tax returns at least twice. Defendant's counsel deflected each request or attempted to change the subject. N.T. at 11-12. This court concludes that the Defendant's failure to introduce his tax returns was intentional. This court drew a negative inference from the Defendant's failure to produce his tax returns. This court inferred that the Defendant had other sources of income not reflected on his W-2s that would have appeared on his tax returns. The other sources possibly included investment income, equity or partnership disbursements, tax free income, etc. The parties failed to provide sufficient evidence for the court to impute a specific amount of additional income.[9]

C. The Defendant failed to prove or produce any evidence demonstrating that the Defendant's $115,000.00 bonus received in 2022 and included in his 2022 W-2 was treated as a marital asset in the parties' divorce and distributed as part of Equitable Distribution.

In January of 2022 the Defendant received a bonus from his employer in the amount of $115,000.00. N.T.at 22. The bonus was reflected in the Defendant's 2022 W-2. N.T at 23. Counsel for the Defendant repeatedly argued without any supporting evidence that the $115,000 bonus had been treated as a marital asset in the parties' divorce and distributed as part of Equitable Distribution. Counsel for the Defendant argued that including the bonus in Defendant's income constituted impermissible "double dipping." N.T. 22-24. Counsel argued that it was an error to include the bonus as a marital asset in the divorce and as income for support purpose.

Despite these arguments, the Defendant failed to provide any evidence to support his

---

[9] If parties obtain additional information or evidence, it can be addressed via a modification.

9

46

argument. The Defendant did not introduce into evidence an executed Property Settlement Agreement or a final Equitable Distribution Order. Defendant's counsel did not call her client or the Plaintiff to testify under oath about the financial terms of the parties' divorce. Without proof to the contrary, this court calculated the Defendant's income and support obligation based on the Defendant's W-2, the only official income or tax reporting document presented by the Defendant.

## V. Conclusion

For the reasons set forth above the Defendant's appeal should be dismissed and this court's April 12, 2024 Order should be sustained.

BY THE COURT:

_____
RICHARD H. LOWE, J.

10

## **CERTIFICATE OF COMPLIANCE**

I, Alexandra Junkin, attorney for Appellant, certify that the attached brief complies with the provisions or Rule of Appellate Procedure 2135, based on the calculation by the word processing system used to prepare such brief.

Respectfully submitted,
**RAFFAELE PUPPIO**

Dated: 10/11/24

Alexandra Junkin, Esquire
Attorney ID.: 322708
19 W. Third Street
Media, PA 19063
610-891-6710
alex@RaffaelePuppio.com

48